(160 App. Div. 469)

STOWELL v. R. M. OWEN & CO. et al.

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

LANDLORD AND TENANT (§ 165*)—INJURIES FROM DEFECTIVE OR DANGEROUS CONDITION.

Labor Law (Consol. Laws, c. 31) § 94, providing that the owner of every tenant-factory shall keep the entire building, the cellar, basement, and all parts and places used in common in a clean and sanitary condition, and also safe, did not impose upon an owner the absolute duty of seeing that a door from the basement into an elevator shaft was safe in a mechanical sense, since the whole section and the provision in question apply to the keeping of the premises in a clean and sanitary condition, and an elevator door is not an integral part of a cellar or basement, as those words are generally understood, nor a part or place in the sense in which those words are used in the statute, and, even though the door was unsafe as a piece of mechanism, the owner was not liable for injuries to a tenant's employé, independent of negligence.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. § 165.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Clarence D. Stowell against R. M. Owen & Company and another. From a judgment on a verdict for plaintiff and an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

B. L. Pettigrew, of New York City, for appellants.

Howard C. Taylor, of New York City, for respondent.

SCOTT, J. The defendants are the lessees of the whole of a building in the city of New York, being what is described as a "tenant-factory." They occupy a portion of the building for the purposes of their own business, and other portions they sublet. Among others, they lease to a concern, known as United Manufacturers, a part of the basement, as well as a part of an upper floor. Another part of the basement is leased to the firm of C. A. Metzger & Co. Connecting the several floors, as well as the basement, is a freight elevator for the use of the tenants in the building. The openings into the elevator shaft are protected with heavy duplex doors, divided horizontally in the middle and counterbalanced so that, when the upper half is pushed upwards, the lower half descends, and vice versa. The two parts of the door are connected by a chain which passes over a pulley or wheel. This chain is fastened through a piece of metal called a "lug," in which there is a hole to hold the chain.

The plaintiff was an employé of the United Manufacturers, and on the day of the accident, having occasion to descend in the elevator to the basement, he did so, and when he arrived at the bottom he undertook to open the doors by pushing up the upper half. The doors did not completely open, so he put his foot on the lower half to push it down. As he did so, the upper half fell, breaking his leg. Just what caused the door to fall is not made at all clear. It was shown that it was possible for the chain connecting the two doors to slip out of the lug, and that this had happened once, but only on one side, whereas in order that the upper half should fall it would be necessary that the chain should slip on both sides, for the doors were connected by two chains one on each side.

In the view which we take of the case, however, it will not be necessary to consider how the accident happened or who, if any one, is chargeable with negligence with respect thereto further than to say that upon the evidence we should find difficulty in sustaining a judgment resting solely upon an imputation of negligence to defendants.

The complaint was so framed as to permit a recovery either upon the ground of negligence or under a section of the Labor Law to which we shall presently refer. At the close of all the evidence the court required the plaintiff to elect whether he would rely upon negligence or upon defendant's statutory liability, and he elected to stand upon the latter. The question we have to determine therefore is whether or not the judgment can be sustained under the statute referred to.

The provision relied upon forms a part of section 94 of the Labor Law, and, so far as applicable to the present case, reads as follows:

"The owner of every tenant-factory shall keep the entire building well drained and the plumbing thereof in a clean and sanitary condition; and shall keep the cellar, basement, yards, areaways, vacant rooms and spaces, and all parts and places used in common in a clean, sanitary and safe condition, and shall keep such parts thereof as may reasonably be required by the commissioner of labor properly lighted at all hours or times when said building is in use for factory purposes."

The whole section, from which the above is an excerpt, deals with the responsibility of the owner of a tenant-factory to keep the premises in a clean and sanitary condition, and such is the very apparent purpose of that portion of the section above quoted. When it requires an owner to keep certain portions of the premises used in common in a "safe" condition, the meaning of the word must be ascertained by reference to the general purpose of the section. It cannot properly, in our opinion, be extended so as to impose upon an owner an absolute nondelegable duty to see to it that a contrivance appurtenant to or connected with the elevator is "safe" in a mechanical sense. The elevator door was certainly not an integral part of the cellar or basement, as these words are generally understood, nor was it a "part or place" in the sense in which those words are used in the statute. We are therefore of the opinion that, even if the mechanical contrivance controlling the action of the two halves of the door was "unsafe" as a piece of mechanism, it did not fall within the purview of the statute so as to create an absolute liability on the part of defendants.

As the action was tried and submitted to the jury solely upon the theory that the act did impose upon appellants the absolute duty of keeping the doors safe, it follows that the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.

---

(83 Misc. Rep. 605)

SOCIOLOGICAL RESEARCH FILM CORPORATION v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. December, 1913.)

INJUNCTION (§ 105*)—GROUNDS—ENFORCEMENT OF CRIMINAL LAW.

The police department of a city will not be enjoined from interfering with the exhibition of a moving picture play entitled "The Inside of the White Slave Traffic," which purported to illustrate the working of street prostitutes and show the inside of houses of ill fame and the living conditions of women therein, claimed to be a violation of Penal Law (Consol. Laws, c. 40) § 1140a, making it a misdemeanor to present any obscene or immoral exhibition tending to corrupt the morals of youth or others.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. § 105.*]

Suit by the Sociological Research Film Corporation against the City of New York and another, as Commissioner of the Police Department of the City of New York. Application for injunction denied.